UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**GLENN D. ODOM, II**                                                                                  **PLAINTIFF**

v.                                                   **CIVIL ACTION NO. 5:13CV-P8-R**

**LARRY CRANOR** *et al.*                                                         **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Glenn D. Odom, II, filed the instant *pro se* 28 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on the initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). Upon review, the Court will allow some of Plaintiff's claims to proceed and will dismiss others.

Subsequent to filing the complaint in this action, Plaintiff filed another complaint, which the Clerk of Court opened as a separate civil action. However, upon review of the second complaint, the Court determined that it was a copy of the complaint filed in this action and ordered it to be filed in the docket in the instant action. To the extent the second complaint could be construed as motion to amend the complaint, because it is merely a duplicate copy, **IT IS ORDERED** that the motion (DN 6) is **DENIED**. Plaintiff also filed a second application to proceed without the prepayment of fees. However, since Plaintiff's first application to proceed without the prepayment of fees in this action was already granted (DN 5), **IT IS ORDERED** that the second application (DN 7) is **DENIED** as moot.

**I.**

Plaintiff is an inmate at the Kentucky State Penitentiary (KSP). He sues Lieutenant Larry Cranor; Warden Randy White; Nurse Gloria Lewis; Grievance Coordinator Skyla Grief; Nursing Supervisor John Wood; Dr. Steve Hiland; "Ky. D.O.C."; and "Unknown officers-extraction

team." He sues Defendants White and Wood in their official capacities and sues Defendants Cranor, Lewis, and Hiland in their individual capacities. He does not identify in which capacity he sues Defendant Grief or the "Unknown officers-extraction team."

Plaintiff lists the following under the heading "CAUSE OF ACTION": (1) "Cruel and Unusual Punishment; Excessive force; Retaliation; Malicious and Sadistic intent" in violation of the Eighth Amendment; (2) Deliberate indifference to serious medical needs in violation of the Eighth Amendment; (3) "Protection and Advocacy for Individuals with Mental Illness Act"; (4) Americans with Disabilities Act; (5) Rehabilitation Act; and (6) Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress.

Plaintiff, who describes himself as mentally ill, states that on July 5, 2012, he attempted suicide by cutting his arm and wrist in three places with "an old, rusty razor." He states that Defendant Cranor came to his cell and "angerily stated 'what do you need? Some God**** attention?'" Plaintiff states that Defendant Cranor made him strip down to his underwear, placed him in handcuffs and shackles, and "then began to jerk and rush plaintiff down the hall attempting to make plaintiff fall or become combative or resistant." Plaintiff states that Defendant Cranor has a history of abusing inmates once he becomes upset. He states that Defendant Cranor made comments to him, including, "''I deal with f***ing retards like you all the time! . . . Since you want attention, I'll give it to you!'" (Ellipses used by Plaintiff.) Plaintiff reports that he was placed in a "mental health restraint chair[,]" which has "belt-like restraints built in." He states that the belt restraints were applied too tightly. Plaintiff states that Defendant Cranor "and his subordinate floor officers, then deliberate and maliciously placed an extra set of handcuffs on each of plaintiff's wrists which were also applied to cause pain and

discomfort." Plaintiff further states, "These handcuffs cut off circulation due to the black belt restraints forcing plaintiffs arms down to the restraint chair." Plaintiff states that the extra restraints were "against policy" and that two sets of restraints "were solely applied to cause pain and punish plaintiff for attempting suicide."

Plaintiff also states that Defendant Cranor and "unknown ofcs." used excessive force against him "by sadistically and maliciously applying extra wrist restraints that were extremely too tight and caused permanent injury to Plaintiff's nerves/circulation." He states these actions violated the Eighth Amendment.

Plaintiff reports that Defendant Nurse Lewis was called in to check his ankle and wrist restraints. Plaintiff told her the restraints were too tight. Plaintiff states, "As she could not fit one (1) finger between some of plaintiff's restraints she still acted as if she could." He states that Defendant Lewis did not check his right wrist restraint and ignored his request for her to do so. Defendant Lewis also refused to clean or treat Plaintiff's cuts on his arm and wrist and did not ask him what he used to cut himself.

Plaintiff states that because of the actions of Defendants Cranor and Lewis his "hand, wrists, fingers, and forearms go completely numb while he rises from laying down." He states that he has been denied medical treatment for these alleged injuries.

Plaintiff states that Defendant Wood is the supervisor of nurses and is responsible for all training of nurses and how they perform their duties. He states, "There is no excuse as to why Gloria Lewis has been so ill-trained." He states the Defendant Wood encourages nurses "to cover up and allow officers to do as they please."

Plaintiff states that Defendant Warden White "has allowed this excessive force upon plaintiff, constructively, by neglecting to train his supervisors correctly in regards to restraint chair restraints and anger management." He further states that Defendant White "must order his subordinates to follow policies and restraint chair procedures . . . Inflicting pain upon the mentally ill for simply attempting suicide is senseless and unlawful."

Plaintiff also states that Defendant Dr. Hiland has refused to examine Plaintiff's injured wrists. Plaintiff states that Defendant Hiland "refused plaintiff treatment because plaintiff has filed complaints on him to the KY. Medical Board of Licensure and other complaints."

Plaintiff further states that Defendant Grief "deliberately denied plaintiff's grievance on this issue solely to obstruct litigation (concluding it would work)." He states that he "is allowed to file a late grievance for such 'suicide watch' reasons." He states that after he filed this complaint someone changed the policy on August 6, 2012, and that his grievance complied with the grievance policy.

As relief, Plaintiff seeks compensatory and punitive damages and injunctive relief.

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**III.**

A.      **Claims against Defendants White, Wood, and Ky. DOC**

Plaintiff sues Defendants White and Wood in their official capacities only, as well as the Ky. DOC (KDOC). "Official- capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Because White and Wood are employees or officers of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State agencies and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks money damages from KDOC, a state agency, and state officers or employees in their official capacities, he fails to allege cognizable claims under § 1983.

Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against these Defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Moreover, a state and its agencies, such as the KDOC, may not be sued in federal court, regardless of the relief sought, unless the state has waived its sovereign immunity under the Eleventh Amendment or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).

Therefore, Plaintiff's claims against KDOC for all types of relief and his official-capacity claims against White and Wood for monetary damages will be dismissed for failure to state a

claim upon which relief can be granted and for seeking monetary relief from Defendants who are immune from such relief.

The Court will allow Plaintiff's claims for injunctive relief only against Defendants White and Wood to proceed for further development in connection with the training of personnel concerning use of restraints. In allowing these claims to proceed, the Court passes no judgment on their ultimate merit.

**B.     Defendant Grief**

Plaintiff does not identify in which capacity he sues Defendant Grief. However, regardless of in which capacity Plaintiff seeks relief against Defendant Grief, the claim fails. His official-capacity claim would fail because state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. at 71, and the Eleventh Amendment acts as a bar to a claim for monetary damages against this Defendant in her official capacity. *Kentucky v. Graham*, 473 U.S. at 169.

Plaintiff's claim against Defendant Grief in her individual capacity would also fail because Plaintiff's only claim against her concerns the handling of his grievances. There is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the

subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Thus, where the only allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged denial of medical treatment. *Id.* Accordingly, Plaintiff's individual-capacity claim against Defendant Grief would also fail.

C.     **Protection and Advocacy for Mentally Ill Individuals Act (PAMII)**

Plaintiff's claim under the PAMII must also be dismissed. "PAMII Acts require that a state must establish a system to protect and advocate the rights of the disabled in order to qualify for federal monies[.]" *Ky. Protection & Advocacy Div. v. Hall*, No. Civ. A. 3:01-CV-538-H, 2001 U.S. Dist. LEXIS 26316, at *2 (W.D. Ky. Sept. 24, 2001) (citing 42 U.S.C. § 10805(a)). Under the PAMII, a "system" established in a state to protect and advocate the rights of mentally ill individuals has the authority to pursue legal remedies. 42 U.S.C. § 10805(a). However, the PAMII does not provide an individual a cause of action. Therefore, Plaintiff's claim under this Act fails to state a claim.

**D.      Americans with Disability Act (ADA) and Rehabilitation Act (RA) claims**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the Rehabilitation Act states:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). To state a claim under the ADA, a plaintiff must allege that: (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, and (3) such exclusion, denial of benefits, or discrimination was because of a disability. 42 U.S.C. § 12132. In order to establish a violation of the RA, in addition to these three elements, Plaintiff must show that the program or activity receives federal funds. *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 841 (6th Cir. 1996).

Plaintiff has failed to set forth sufficient facts to satisfy these elements. The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff has failed to state sufficient facts to show that he had an impairment that substantially limits a major life activity or what major life activity may be limited, that he was regarded as having such an impairment, that he was excluded from participation or denied the benefits of a public entity, or

that the alleged actions were taken because of any impairment.  While the complaint may contain unsupported factual allegations of mental illness, Plaintiff's conclusory allegations are not entitled to the assumption of truth.  *See Tackett*, 561 F.3d at 488 (stating that the district court need not accept a 'bare assertion of legal conclusions'") (quoting *Columbia Natural Res., Inc.*, 58 F.3d at 1109).

Therefore, Plaintiff's claims under the ADA and RA will be dismissed for failure to state a claim upon which relief may be granted.

**E.     Emotional distress**

Plaintiff's claims for negligent and intentional infliction of emotional distress will also be dismissed.  Under Kentucky law, in order to make out a case for either negligent or intentional infliction of emotional distress, Plaintiff's emotional distress must be severe or serious.  *See Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004) (recognizing that there is a high threshold necessary to make out a prima facie case of intentional infliction of emotional distress/outrage, *i.e.*, "that the conduct at issue must be a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community" and that the conduct must be "extreme and outrageous") (quotations omitted).  "A 'serious' or 'severe' emotional injury occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case.  Distress that does not significantly affect the plaintiff's everyday life or require significant treatment will not suffice."  *Osborne v. Keeney*, Nos. 2010-SC-000397-DG and 2010-SC-000430-DG, 2012 Ky. LEXIS 203, at *38 (Ky. Dec. 20, 2012).  Plaintiff's complaint does not adequately state allegations regarding mental distress he suffered to avoid dismissal of these claims.  Reading the complaint in light most favorable to Plaintiff, as the Court is required to do, Plaintiff, at best, has made only conclusory

and factually unsupported allegations that Defendants' alleged conduct caused him to suffer mental distress.  Such "'naked assertion[s]' devoid of 'further factual enhancement,'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, 557), are insufficient to state a claim for negligent or intentional infliction of emotional distress.

Accordingly, the Court will dismiss Plaintiff's claims for negligent and intentional infliction of emotional distress for failure to state a claim upon which relief can be granted.

**F.     Eighth Amendment and retaliation claims**

Upon review, the Court will allow Plaintiff's individual-capacity, excessive-force claims concerning the application of restraints to proceed against Defendants Cranor and "Unknown officer-extraction team."[1]  The Court will also allow Plaintiff's individual-capacity claims for deliberate indifference to serious medical needs to proceed against Defendants Lewis and Hiland and for retaliation against Defendant Hiland.  In allowing these claims to go forward, the Court passes no judgment on their ultimate merit.

**IV.**

For the reasons set forth herein, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Plaintiff's official-capacity claims for monetary damages against Defendants White and Wood and all claims against Defendants KDOC and Grief are **DISMISSED** pursuant to 28 U.S.C. §§ 1915A(b)(1), (2) for failure to state a claim upon which relief may be

---

[1] Plaintiff fails to specify in which capacity he sues the unknown officers.  Because Plaintiff alleges similar facts against them as to those against Defendant Cranor and sues Cranor in his individual capacity, the claims will be construed as brought against the unknown officers in their individual capacities.  *See Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc) (where § 1983 plaintiff fails to affirmatively plead capacity in the complaint, the Court looks to the course of proceedings to determine whether the Sixth Circuit's concern about notice to the defendant has been satisfied).

granted and for seeking monetary relief from a defendant who is immune from such relief.  **IT IS FURTHER ORDERED** that Plaintiff claims under the PAMII, ADA, and RA and his claims for intentional and negligent infliction of emotional distress are **DISMISSED**  pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court will enter a separate Scheduling Order governing the development of the claims that have been permitted to proceed.

Date:

cc: Plaintiff, *pro se*
    Defendants
    General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.010