UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**GLENN D. ODOM, II**     **PLAINTIFF**

v.     **CIVIL ACTION NO. 5:13CV-P8-GNS**

**LARRY CRANOR** *et al.*     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion for summary judgment by Defendant Gloria Lewis (DN 80), by counsel. Plaintiff, proceeding *pro se*, filed a response to the motion (DNs 113 and 114); Defendant Lewis filed a reply (DN 115); and Plaintiff filed a sur-reply (DN 118). For the reasons that follow, the Court will grant Defendant Lewis's motion.

**I.**

Plaintiff was incarcerated at the Kentucky State Penitentiary (KSP) at the time pertinent to the complaint. The complaint alleged a variety of claims concerning an incident in which Plaintiff attempted suicide, was extracted from his cell, and placed in a restraint chair to prevent further self-harm. Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court dismissed a number of claims and allowed Plaintiff's 42 U.S.C. § 1983 claim to proceed against Defendant Lewis, among other claims permitted to go forward against several other Defendants.

In the verified complaint, Plaintiff, describing himself as mentally ill, stated that on July 5, 2012, he attempted suicide by cutting his arm and wrist in three places with "an old, rusty razor." Plaintiff stated that Defendant Cranor made him strip down to his underwear, placed him in handcuffs and shackles, and removed him from his cell. Plaintiff alleged that he was placed in a "mental health restraint chair[,]" which has "belt-like restraints built in." He stated that the belt

restraints were applied too tightly. He stated that Defendant Cranor and other officers "then deliberate and maliciously placed an extra set of handcuffs on each of plaintiff's wrists which were also applied to cause pain and discomfort." Plaintiff further stated, "These handcuffs cut off circulation due to the black belt restraints forcing plaintiffs arms down to the restraint chair."

Plaintiff alleged that Defendant Nurse Lewis was called in to check his ankle and wrist restraints. Plaintiff told her the restraints were too tight. Plaintiff stated, "As she could not fit one (1) finger between some of plaintiff's restraints she still acted as if she could." He stated that Defendant Lewis did not check his right wrist restraint and ignored his request for her to do so. According to the complaint, Defendant Lewis also refused to clean or treat Plaintiff's cuts on his arm and wrist and did not ask him what he used to cut himself. Plaintiff further maintained that because of the actions of Defendants Cranor and Lewis his "hand, wrists, fingers, and forearms go completely numb while he rises from laying down." He stated that he has been denied medical treatment for these alleged injuries. Upon initial screening, the Court allowed Plaintiff's individual-capacity claim against Defendant Lewis for deliberate indifference to his serious medical needs to proceed.

Defendant Lewis argues in her motion for summary judgment that the record evidence shows that she acted appropriately and was not deliberately indifferent to Plaintiff's medical needs.[1] She states that on July 3, 2012, corrections officers observed that Plaintiff had inflicted a cut on his left forearm. She cites the Extraordinary Occurrence Report prepared by KSP

---

[1] Defendant Lewis also argues that she is entitled to summary judgment on grounds that Plaintiff's claims are barred by the doctrine of issue preclusion because Plaintiff brought a previous claim before the Kentucky Board of Claims and on grounds that he failed to exhaust his administrative remedies. Because the Court will grant Defendant Lewis summary judgment for the reasons stated herein, it will not address the other grounds raised.

personnel which Plaintiff attached to the complaint.[2]  She states that officers then placed Plaintiff in a restraint chair to prevent further self-harm at approximately 11:26 pm.  She states that the Extraordinary Occurrence Report describes Plaintiff's injury as a "light cut on his left forearm approximately two (2) inches in length."  Defendant Lewis maintains that she checked all of the restraints and found that the self-inflicted wound did not require treatment, again citing the Extraordinary Occurrence Report.  She states that she also charted the incident in Plaintiff's medical record made at 11:26 on July 3, 2012, and signed at 12:01 am on July 4, 2012.  The medical record is attached to the motion and states as follows:

> I/M placed into restraint chair due to threats of self harm. I/M has two small scratches on his left FA [forearm]. No need for tx [treatment]. Skin is W/D [warm and dry] Resp E/U Color WNL [within normal limits]. No SS [signs or symptoms] of acute distress noted. Will continue to monitor.

Defendant Lewis maintains that video recordings of KSP officers placing Plaintiff in the restraint chair and removing him from the restraint chair, produced under seal by counsel for Defendant Cranor and other KSP Defendants, show that she physically checked the arm restraints on each of Plaintiff's extremities.  She states that Plaintiff mentioned his right arm restraint, which she had just checked.  She contends that after that, he made no mention of his arm restraints and was placed on a fifteen minute watch, citing the Extraordinary Occurrence Report.  The fifteen minute watch log did not record any "unusual or disruptive behavior."

Defendant Lewis further maintains that at around 2:18 am on July 4th, officers released Plaintiff from the restraint chair.  Defendant Lewis states that at that time, Plaintiff complained of pain in his right arm, which Defendant Lewis examined for injuries.  She states that she did not observe or chart any injuries at this time.

---

[2] Plaintiff states in the complaint that the incident occurred on July 5, 2012.  The Extraordinary Incident Report and medical records concerning the incident make clear that Plaintiff was placed in the restraint chair at approximately 11:30 pm on July 3, 2012, and removed from the restraint chair at approximately 2:15 am on July 4, 2012.  Plaintiff does not dispute the accuracy of the date provided in these records.

Defendant Lewis contends that on July 6th, Plaintiff was seen by Heather Losser, a licensed psychological associate, to determine why Plaintiff had caused his wounds. Citing Losser's medical notes, Defendant Lewis points out that Losser noted Plaintiff's complaints about "issues with the grievance coordinator and legal office staff over his legal mail and legal copies" and his belief that "cutting on himself is a good approach to take" so that "people" will pay attention to his issues with the legal office. Losser's notes also state that Plaintiff informed Losser that "the razor blade he obtained was too dull to cause any serious injury."

Defendant Lewis argues that Plaintiff claimed an almost identical injury to his wrists in a lawsuit he filed in the Eastern District of Kentucky (*Odom v. Meko et al.*, Case No. 12-cv-109-HRW (E.D. Ky.)) prior to filing this action. In that action, Plaintiff sued prison guards and two nurses for a cell extraction that occurred while Plaintiff was incarcerated previously at the Little Sandy Correctional Complex (LSCC). Defendant Lewis maintains that on January 12, 2012, Plaintiff "staged a similar 'suicide attempt' there which resulted in his extraction from his cell[,]" and placement by LSCC prison personnel in a restraint chair. In that case, argues Defendant Lewis, Plaintiff claimed that the event "caused him to suffer 'numbness, prickly feelings, and tingling sensation upon standing from sleep or laying horizontally . . . ."

Defendant Lewis states that Plaintiff's medical records show that upon his arrival at KSP on February 22, 2012, he did not report problems with his wrists when asked to provide his relevant medical history. Defendant Lewis states that, although Plaintiff had other medical complaints, he first complained about his wrists on March 27, 2012, complaining that both wrists continued to be numb and asked Terri Jones, RN, to look at his records from his incarceration at LSCC. Defendant Lewis states that according to Plaintiff's medical records, on June 10, 2012, Plaintiff again complained that, because of the earlier incident at LSCC, both his wrists became

4

numb from the elbow to the finger tips and he felt "prickly" and that Nurse Prather instructed him to address the problem with the physician on sick call rounds. On June 21, 2012, according to medical records, Plaintiff told Nurse Prather that his right inner thigh was numb, and Nurse Prather again instructed him to address the problem with the physician on sick call rounds. The medical records show that Plaintiff presented at the prison clinic on June 27, 2012, but was asked to leave for masturbating while there. The incident that gave rise to this lawsuit occurred less than a week later on July 3, 2012.

      Defendant Lewis also points to another medical record from July 14, 2012, subsequent to his placement in the restraint chair at KSP, where Plaintiff complained of a wrist injury. The medical note states: "Inmate states on July 5th he was put in restraint chair with no nurse present to check restraint. Inmate states he has numbness and tingling in right wrist and hand due to double cuffs." Defendant Lewis contends that Plaintiff's "story [] was very similar to the one he had reported at LSCC[.]" She states that, assuming Plaintiff "was referring to the cell extraction at issue in this case on July 3rd (despite him stating that 'no' nurse was present to check his restraints), he appears to believe it was handcuffs applied too tightly by officers that caused his injury." Defendant Lewis contends that this would be "inconsistent with his claim that Nurse Lewis's failure to properly check the belt-like restraints on his chair caused his alleged injuries."

      Defendant Lewis maintains that Plaintiff next submitted a Sick Call Slip on August 15, 2012, stating that his fingers, hands, and wrists become numb upon waking, and that a "prickly feeling causes me to shake them and rub them for 3 minutes to receive feeling." Defendant Lewis also points to another Sick Call Slip dated August 27, 2012, in which Plaintiff claimed that his problems were so bad he could not close his hands. On August 30, 2012, the medical records show that Nurse Jones reported on Plaintiff's complaint of numbness and tingling in his

5

wrists. According to the medical record attached to the summary-judgment motion, a DOC physician advised him not to worry about his condition; that as long as the feeling returned after he awoke it was "not a serious issue"; and no new orders were issued. Defendant Lewis maintains that there are no other notes in Plaintiff's medical records relating to his alleged problems with numbness in his wrists.

In response to the motion for summary judgment, Plaintiff states that the "factual evidence recorded on video camera portray that defendant Lewis did not check plaintiff's right black belt wrist restraint and also that his restraints were too tight – which caused injury. The defendants, by contrast, claim the opposite. There is clearly a genuine issue of fact." He further states as follows:

> The fact that defendant Lewis knew plaintiff's wrists restraints were so tight that she couldn't squeeze her index finger between the restraints and plaintiff's skin; The fact that Lewis deliberately refused to check plaintiff's right black belt restraint although plaintiff asked her to on camera; And the fact that Lewis did not express concerns to the prison officials regarding the extra wrist restraints and the restraints being too tight, establishes "deliberate indifference." Plaintiff had a "serious medical need" for Lewis to check his wrists restraint to ensure safety and circulation of blood flow (see actual video footage of incident – filed with court).

He states Defendant Lewis's deliberate indifference "caused plaintiff's nerve damage and circulation problems." Plaintiff points to no other medical records than those cited by Defendant Lewis.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted).

### III.

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). A claim of deliberate indifference under the Eighth Amendment has

both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. at 837-47). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Terrance*, 286 F.3d at 843 (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id*. at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff has failed to satisfy the objective component of a deliberate-indifference claim against Defendant Lewis because he has not presented facts to support the existence of a "sufficiently serious" medical need. As to any injury which may have resulted from the suicide attempt itself, the medical note made by Defendant Lewis stated, "I/M has two small scratches on his left FA [forearm]. No need for tx [treatment]." Also, the Extraordinary Occurrence Report prepared by KSP personnel concerning the event describes Plaintiff's injury as a "light cut on his left forearm approximately two (2) inches in length." Moreover, when Plaintiff was later interviewed by a licensed psychological associate concerning his self-harm he

acknowledged that the razor blade was too dull to cause serious injury. Plaintiff does not dispute this evidence and in fact seems to abandon any deliberate-indifference claim based on the self-inflicted injuries to his arm in his briefing on the summary-judgment motion.

Plaintiff has also failed to establish a "sufficiently serious" medical need with respect to the injuries that he alleges resulted from the wrist restraints in the restraint chair. While Plaintiff may dispute the thoroughness of Defendant Lewis's examination of his wrist restraints, it is undisputed that Defendant Lewis was present in the shower cell to observe Plaintiff after he was placed in the restraint chair.[3] Defendant Lewis's medical notes made immediately after the Plaintiff's placement in the restraint chair state, "No SS (signs or symptoms] of acute distress noted." It is also undisputed that Defendant Lewis was present to observe Plaintiff's medical condition at the time he was removed from the restraint chair, as well. She observed no injuries to Plaintiff, and Plaintiff offers no evidence to support his statements that his right wrist was injured at that time.

In the two months following the placement in the restraint chair at KSP, Plaintiff voiced complaints of numbness in both wrists and hands.[4] However, his medical records show that on July 14, 2012, Nurse Eric Madden charted the following medical note: "I/m states on july 5th he was put in restraint chair with no nurse present to check restraint. I/m states he has numbness and tingling in rt wrist and hand due to double cuffs. Stated to i/m needs to do stretching of wrist

---

[3] Both Plaintiff and Defendant Lewis argue that the video recordings of Plaintiff's placement in and removal from the restraint chair support their arguments. The Court has viewed the video recordings provided under seal by counsel for the other Defendants to this action. However, the Court will grant summary judgment to Defendant Lewis based on the medical records and Extraordinary Occurrence Report in the record, and it is therefore not necessary to cite the video recordings herein.

[4] It appears that Plaintiff only alleges that his right wrist was injured during the placement in the restraint chair at KSP. He appears to allege that both wrists were injured during his placement in a restraint chair after a previous suicide attempt at LSCC. However, the Court need not resolve this issue to rule on the instant summary-judgment motion as Defendant Lewis is entitled to summary judgment for the reasons stated herein.

9

hand fingers may help with numbness." Plaintiff submitted Sick Call Slips on August 15 and 27, 2012, complaining of numbness in both hands and wrists. The medical record from the "MD sick call in 7CH [7 cell house] re: wrists going numb" shows that he was seen during sick call for these complaints. The medical notes state:

> I/ stated my wrists continue to go numb and tingle upon waking. He said it was so bad he can't close his hands. MD asked if it got better after[] waking. He said it did, MD advised him to[]not worry about it as long as the feeling comes back it is not a serious issue. I/M verbalized understanding. No new order.

Thus, the medical records demonstrate that the numbness in Plaintiff's wrist was "not a serious issue." Plaintiff offers no evidence to refute this other than his own statements.

Statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Id.*

Here, the medical records produced by Defendant Lewis demonstrate that the numbness in Plaintiff's hands and wrists was not a "sufficiently serious" medical need to establish the objective component of a deliberate-indifference claim. Plaintiff's own statements are not sufficient to establish a genuine issue of material fact on this issue. Therefore, the Court finds that numbness in Plaintiff's hands and wrists does not state a "sufficiently serious" medical need to give rise to a deliberate-indifference claim. *See Dallio v. Hebert*, 678 F. Supp. 2d 35, 60 (N.D.N.Y. 2009) (holding that numbness in the plaintiff's hands and fingers along with other

injuries, including "two black eyes, bruising in his kidney area on his left side, . . . lacerations on his arms and wrists, [and] a headache" were insufficient to establish a serious medical need).

Furthermore, the standard applied in reviewing the actions of prison doctors and medical staff in this type of case is deferential. *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Courts will generally refrain from "second guessing" the adequacy of a particular course of treatment where a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Furthermore, a court will generally not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002).

Here, Plaintiff undisputedly received medical attention for his complaints concerning his wrists, both at the time he was put in the restraint chair and subsequent to the incident. Plaintiff does not refute that Defendant Lewis was present to check Plaintiff's ankle and wrist restraints at the time he was placed in the restraint chair and was present to observe any injuries to Plaintiff when he was taken out of the restraint chair. Plaintiff's complaint that Defendant Lewis failed to check his right wrist restraint amounts to a dispute over the adequacy of the treatment Defendant Lewis provided. The Court will not second guess this medical judgment now. *See Westlake*, 537 F.2d at 860 n.5. Moreover, in the two months following his purported suicide attempt, Plaintiff complained to medical personnel about numbness in both wrists and hands, and medical records show that his complaints were addressed by medical personnel. Ultimately, on August 30, 2012, he was told by a doctor that "it is not a serious issue." While Plaintiff may disagree with the diagnosis and treatment, such disagreement does not rise to the level of a

constitutional violation. *Id.* Therefore, Defendant Lewis is entitled to summary judgment for this reason, as well.

## IV.

For the foregoing reasons, **IT IS ORDERED** that the motion for summary judgment by Defendant Lewis (DN 80) is **GRANTED**. The Clerk of Court is **DIRECTED to enter SUMMARY JUDGMENT in favor of Defendant Lewis pursuant to Fed. R. Civ. P. 56.**

Date: September 21, 2015

**Greg N. Stivers, Judge**
**United States District Court**

cc:  Plaintiff, *pro se*
     Counsel of record
4416.010